IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

LAVONE HOOPER,

            Petitioner,    :    Case No. 3:12-cv-108

- vs -                             District Judge Timothy S. Black
                                        Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional Institution,

                                        :

            Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner Lavone Hooper brought this habeas corpus case under 28 U.S.C. § 2254 to obtain relief from his convictions in the Montgomery County Common Pleas Court on one count of murder and two counts of kidnapping. As a result of those convictions, he is serving a sentence of twenty-five years to life in Respondent's custody.

Upon initial review under Rule 4 of the Rules Governing § 2254 Cases, Chief Magistrate Judge Ovington ordered the Warden to answer (Doc. No. 3). In response, the Warden has filed a Return of Writ (Doc. No. 6) and Hooper filed a Reply (Doc. No. 16). The case is thus ripe for decision.

Hooper pleads the following grounds for relief:

> **Ground One:** Petitioner's Fourteenth Amendment rights to a fair trial were violated when the trial court permitted "other acts" evidence.
>
> **Supporting Facts:** The trial court permitted the State to introduce that Petitioner had been previously adjudicated a deliquent [sic] for committing gross sexual imposition. Also, Detective Tackett's

1

repeated reference to Petitioner's "rape charge" was prejudicial and violated Petitioner's right to a fair trial.

**Ground Two:** Petitioner was denied a fair trial as guaranteed by the Fourteenth Amendment due to the cumulative errors permitted at trial.

**Supporting Facts:** The State's repeated references to Petitioner's juvenile adjudication of deliquency [sic], the exclusion of an unidentified bloody shirt (exculpatory), the State's failure to authenticate the DNA swabs collected, and then detectives repeated references to a prior 'rape' case, resulted in cumulative error which denied Petitioner a fair trial, as guaranteed by the Fourteenth Amendment.

**Ground Three:** The evidence that Petitioner's convictions are founded upon is insufficient, as a matter of law, because the State did not prove beyond a reasonable doubt, each and every element of the charged offenses.

**Supporting Facts:** The evidence the State presented at trial did not prove beyond a reasonable doubt that Petitioner "caused the death" of Edith Morehead.  Furthermore, the jury found that because of a "lack of force" precluded a guilty verdict for the rape, then that same "lack of force" precluded a guilty verdict for the kidnappings' [sic] and murder.

**Ground Four:** Petitioner received ineffective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution.

**Supporting Facts:** In Petition's [sic] direct appeal his appellate counsel was ineffective for failing to raise the following issue[s] on direct appeal:  Termination entry was not a final appealable order; Sixth Amendment Confrontation Clause violation, Due process violation and confrontation clause issues concerning Dr. Smith's testimony; Due process violations when prior adjudication as a deliquient [sic] was mischaracterized to the jury.  See also Question 11(a)(5).

(Petition, Doc. No. 2.)

**Procedural History**

Edith Morehead was murdered in Dayton, Ohio, on October 28, 1996. Her body was found two days later behind the Hickorydale Elementary School, not far from her home in the Cornell Ride Apartments. She had died of blunt force trauma to her skull and a stab wound to her left lung. Oral, vaginal, and rectal swabs were taken, but no suspect was identified and the case was closed as unsolved about a year after Ms. Morehead's death. Having obtained funding for processing "cold case" DNA, the Miami Valley Regional Crime Laboratory analyzed the swabs taken from Ms. Morehead's body. When Hooper's DNA was entered into the relevant database in 2006, the crime lab was notified of a match with the DNA recovered from Ms. Morehead's body. The Montgomery County grand jury thereupon returned an indictment charging Hooper with murder, kidnapping, and rape. A jury convicted him of murder and kidnapping, but acquitted him on the rape charges.

Represented by new counsel, Hooper appealed to the Second District Court of Appeals which affirmed. *State v. Hooper*, 2010-Ohio-4041, 2010 Ohio App. LEXIS 3419 (2nd Dist. Aug. 27, 2010). The Supreme Court of Ohio declined to accept an appeal (Entry, Return of Writ, Doc. No. 6, Exhibit 17 at PageID 299). Represented by different new counsel, Hooper filed an Application to Reopen the Appeal under Ohio R. App. P. 26(B) which the Second District denied. *Id.* at Exhibit 20, PageID 380. The Ohio Supreme Court accepted jurisdiction and eventually affirmed on the basis of its decision in *State v. Lester*, 130 Ohio St. 3d 303 (2011). *State v. Hooper*, 130 Ohio St. 3d 271 (2011). The instant Petition was timely filed on April 9, 2012.

# Analysis

**Ground One:  Improper Use of "Other Acts" Evidence**

In his First Ground for Relief, Hooper asserts he was deprived of a fair trial in violation of the Fourteenth Amendment when "other acts" evidence was introduced at his trial. Specifically, he complains that in this rape and murder case, the State was permitted to introduce evidence of his juvenile adjudication for gross sexual imposition and the testifying detective was permitted to refer to the prior incident as a rape case.

This claim was raised on direct appeal and decided by the Second District as follows:

> **[\*P13]**   Hooper's   first   assignment   of   error   states:
>
> **[\*P14]** I. "THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING THE STATE TO ADMIT EVIDENCE OF THE DEFENDANT'S PRIOR BAD ACTS."
>
> **[\*P15]** Hooper claims that the trial court erred in allowing the State to introduce evidence that he had previously been adjudicated a delinquent for committing gross sexual imposition because the prejudice resulting therefrom outweighed the probative value of the prior adjudication. He contends that his "gross sexual imposition adjudication provide[d] no probative value to establish the motive" in this case, as the State claimed. He also asserts that he was prejudiced by Detective Tackett's "repeated reference to the 'rape charge'" in the prior case during her testimony at trial.
>
> **[\*P16]** The following representations about Hooper's juvenile record are undisputed. Hooper was charged as a juvenile with rape and kidnapping involving the same victim as in this case, Edith Morehead. The charge was eventually reduced to gross sexual imposition; Hooper admitted this offense and was adjudicated a delinquent. He was placed on probation, but his subsequent involvement in other offenses which violated his probation resulted in his incarceration at the Department of Youth Services.

**[\*P17]** Hooper filed a motion in limine to prevent the State from referring to his prior adjudication at trial, and the trial court held a hearing on the motion before trial began. Initially, the State argued that the gross sexual imposition conviction showed Hooper's motive, claiming that Hooper had attacked Morehead out of vengeance for his incarceration only two months after being released from DYS. However, the juvenile court file did not substantiate the State's claim regarding the proximity of this offense to Hooper's release from DYS, because some documents were missing from the record.

**[\*P18]** Thereafter, the State offered two other arguments for the admissibility of the prior adjudication. First, the State argued that the victim's prior prosecution of Hooper for a sexual offense tended to show that she would not have voluntarily left her apartment with him or engaged in sexual conduct with him in this instance. Thus, the evidence was relevant to elements of rape and kidnapping: whether the victim had been compelled, by force or threat of force, to submit to sexual conduct or to leave her apartment with Hooper. Second, the State argued that the victim's willingness to prosecute Hooper for a prior sexual offense gave him a motive to kill her when he attacked her a second time.

**[\*P19]** The court allowed the State to use the evidence of the prior adjudication "for the limited purpose of establishing motive," and asked counsel to submit limiting instructions at the appropriate time. Defense counsel also asked that the jury be informed of the difference between sexual contact, which an element of gross sexual imposition, and sexual conduct, which is an element of rape. The State did not object to this request.

**[\*P20]** At the end of trial, the court gave the following instruction regarding Hooper's prior conviction:

**[\*P21]** "Evidence was received about a prior juvenile conviction. An adjudication of delinquency is a judgment in a legal proceeding finding a juvenile responsible for a delinquent act. This is referred to as other acts evidence in this case. For purposes of this other act, sexual contact means any touching of an erogenous zone of another including without limitation the thigh, genitals, buttocks, pubic region or that [sic] the person is a female, a breast. For the purpose of sexually arousing or gratifying either person.

**[\*P22]** \*\*\*

5

**[\*P23]** "Concerning the other acts evidence, if you find that the evidence of the other act is true, you may consider that evidence only as those other acts may explain the circumstances of the charges in this case, form or [sic] part of the immediate background of the charges in this case, or as it may be provide [sic] evidence of motive for the charges in this case.

**[\*P24]** "The evidence of other acts was not received and you may not consider it to prove the character of a witness or of the defendant in order to prove that the person acted in conformity of that character. The evidence of other acts you heard cannot be considered for any other purpose than what I have just mentioned."

**[\*P25]** A trial court has broad discretion in the admission or exclusion of evidence, and so long as it exercises its discretion in conformity with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to the defendant. *State v. Haines*, 112 Ohio St.3d 393, 2006 Ohio 6711, at P50, 860 N.E.2d 91; *State v. Powell*, 177 Ohio App.3d 825, 2008 Ohio 4171, at P33, 896 N.E.2d 212.

**[\*P26]** Evid.R. 402 and Evid.R. 403 permit the admission of relevant evidence if its probative value is not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 404 generally prohibits the use of evidence of a person's character, including other crimes, wrongs, or acts, to prove that he acted in conformity therewith on a particular occasion. However, Evid.R. 404(B) permits evidence of other crimes, wrongs, or acts for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Likewise, R.C. 2945.59 permits the use of evidence that shows or tends to show the commission of another crime by a defendant if that evidence is relevant to his motive, intent, the absence of mistake or accident on his part, or if his scheme, plan, or system in doing an act is material.

**[\*P27]** The record demonstrates that the trial court was very conscientious in its consideration of this issue. Hooper had previously been adjudicated a delinquent based on Morehead's accusations. Because he was charged with sex offenses and murder *of the same victim*, the trial court concluded that Hooper's prior adjudication for gross sexual imposition was probative of his motive. Both Evid.R. 404(B) and R.C. 2945.59 permit the use of a prior conviction for this purpose. Moreover, the trial court

>  minimized any unfair prejudice to Hooper by giving a limiting instruction to the jury. The court did not abuse its discretion in permitting the State to present evidence of Hooper's prior adjudication.
>
> [*P28] Hooper also objects to Detective Tackett's references at trial to "rape" in recounting her interviews with Hooper. Detective Tackett worked the case when it was reopened in May 2006, and she went to interview Hooper. At trial, she recounted that, when she had asked Hooper about his acquaintance with Morehead, he mentioned her prior accusation of "rape," and that despite Hooper's estimation that he had not seen Morehead since the juvenile case "four of five years" earlier, the "actual rape charge" had been in 1994. In response to his objection, the trial court instructed the jury that Detective Tackett was permitted to use the term "rape" when she was quoting something that Hooper had said, but that all other references to "rape" would be stricken. In our view, the trial court did not abuse its discretion in handling this issue as it did.
>
> [*P29] The first assignment of error is overruled.

*State v. Hooper*, 2010-Ohio-4041, ¶¶ 29, 2010 Ohio App. LEXIS 3419 (2nd Dist. Aug. 27, 2010).

It could be argued that Hooper failed to fairly present this claim as a federal constitutional claim to the state courts because the Fourteenth Amendment is not mentioned in Hooper's First Assignment of Error.  The Warden does not raise this argument, but instead notes that federal habeas courts do not review state court evidentiary rulings (Return of Writ, Doc. No. 6, PageID 59).  Appellant did cite one United States Supreme Court case in his brief (Appellant's Brief, Return of Writ, Ex. 11, PageID 113, *citing Huddleston v. United States*, 485 U.S. 681 (1988)).  The Warden does not claim lack of fair presentation and treats this First Ground for Relief as preserved for decision on the merits.  This Court will do likewise and treat the Second District's decision as subsuming the Due Process question within the fairness argument about the "other acts" evidence and deciding the constitutional claim on the merits.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision

7

is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The decision of the Second District Court of Appeals on this claim is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent. The Sixth Circuit has held "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).

Hooper relies on *Huddleston v. United States*, 485 U.S. 681 (1988), cited in Reply, Doc. No. 16, PageID 1182. Huddleston, however, made no constitutional claim and the use of similar acts evidence at his trial was, in any event, upheld by the Supreme Court.

Moreover, the "other acts" evidence in this case is not propensity evidence in the classic form of proving bad character to show that a defendant acted on the occasion in suit in conformity to his character. The victim of the gross sexual imposition was the same victim, Ms. Edith Morehead. Evidence of Hooper's prior sexual assault on Ms. Morehead would be admissible to show motive both for the rape charge – she was someone to whom he was sexually attracted[1] -- and of the murder charge – she could identify him and in the past had been willing to testify, which resulted in his conviction.

As the Second District also held, the word "rape" was used by Hooper himself to describe the earlier case and the Detective was merely quoting him; other uses of the word were stricken.

---

[1] The Magistrate Judge does not by using this language wish to be misunderstood as treating rape as a crime of passion rather than a crime of violence.

Hooper's First Ground for Relief is without merit and should be dismissed with prejudice.

**Ground Two: Cumulative Error**

In his Second Ground for Relief, Hooper claims he was denied a fair trial by the cumulative error committed by the trial court. The first and last asserted errors were not errors at all, as discussed above under Ground One. As to the exclusion of the unidentified bloody shirt and the asserted failure to authenticate the DNA swabs from Morehead's corpse, the Second District Court of Appeals dealt with both of these issues under Hooper's Second Assignment of Error on direct appeal. Both were dealt with as issues of Ohio evidence law. The court found no error as to admission of the DNA swabs because the State had offered sufficient evidence about the manner of collection and documentation to show that it was "reasonably certain that substitution, alteration or tampering did not occur." *State v. Hooper, supra*, ¶ 35, citing relevant Ohio case law. The court also found exclusion of the bloody shirt was proper because the collecting police officer had left the State and the supposed "typing" of blood from the shirt would have matched over forty percent of the population. *Id.* at ¶¶ 36-37, again applying Ohio evidence law.

Even assuming these errors did exist and were of constitutional severity, errors cannot be accumulated to raise a habeas corpus claim. In two death penalty cases appealed from this Court, the Sixth Circuit had held such claims are not cognizable. *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012);*Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir.), *cert. denied,* ___

U.S. ___, 132 S.Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied,* 549 U.S. 1027 (2006).

The Second Ground for Relief should be dismissed with prejudice as failing to state a claim upon which habeas corpus relief can be granted.

**Third Ground for Relief: Insufficient Evidence**

In his Third Ground for Relief, Hooper asserts he was convicted on insufficient evidence in that there was insufficient evidence to show he caused the death of Edith Morehead and that the jury verdicts of lack of force as to the rape charges precluded a finding of force sufficient to prove the kidnappings and murder.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

The AEDPA requires habeas courts to give two levels of deference to the state courts in deciding sufficiency of the evidence claims:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(*per curiam)*.

In this case, as in all sufficiency of the evidence cases, the jury found guilt beyond a reasonable doubt.  In reviewing the sufficiency claim on direct appeal, the Second District Court of Appeals held

> **[\*P46]**  Hooper's fourth assignment of error states:
>
> **[\*P47]**  "IV. "APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
>
> **[\*P48]**  Hooper contends that "no evidence was presented to suggest that [he] caused the death" of Morehead. He also claims that the jury's "finding that a lack of force precluded a guilty verdict for rape, while contemporaneously finding force to establish kidnapping and murder [was] contradictory."

11

**[\*P49]** A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." In contrast, when reviewing a judgment under a manifest weight standard of review, "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." *Thompkins*, supra, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717.

**[\*P50]** Hooper was convicted of one count of murder, in violation of R.C. 2903.02(A), which provides that no person shall purposely cause the death of another. He was also convicted of two counts of kidnapping, in violation of R.C. 2905.01(A)(2) and R.C. 2905.01 (B)(2). R.C. 2905.01 (A)(2) provides that no person, by force or threat of force, shall remove another from the place where the other person is found or restrain the liberty of the other person, for the purpose of facilitating the commission of a felony or flight thereafter. R.C. 2905.01(B)(2) states that no person, by force, threat, or deception, shall knowingly restrain another of the other person's liberty, under circumstances that either create a substantial risk of serious physical harm or cause physical harm to the victim.

**[\*P51]** Morehead's mother and her neighbors testified that she did not normally leave her young daughter unattended in her apartment or leave her apartment in her pajamas. Morehead's mother also testified that it was unlike Morehead to leave the apartment without her purse, keys, and identification. This evidence, coupled

with the gruesome discovery of Morehead's body two days later, was probative of whether Morehead left the apartment by force or threat of force.

**[\*P52]** The crime scene and forensic evidence tell the rest of the story. Mud deposited on the tops and sides of Morehead's shoes and lines scraped into the trail near where Morehead was found indicated that she had been dragged, rather than walked, down the trail. Her skull had been fractured in a place and manner that required the use of significant force, and a bloodied rock was found near her body. Morehead also had facial injuries and had been stabbed in the chest. The DNA evidence recovered from Morehead's body indicated that Hooper's semen was on the rectal and vaginal swabs taken from her body. According to a forensic scientist from the MVRCL, semen "realistically" remains in the body for only 24 to 40 hours. This evidence and testimony placed Hooper with Morehead within 24 to 40 hours of her death, although he told the police that he had not seen her in several years.

**[\*P53]** The State also presented testimony from Hooper's cousin, Jeffrey Peters, that Hooper was very familiar with the wooded area in which the body was found and that, before Peters learned that Morehead had been killed, Hooper had told him that he had "messed around" with her in those woods and had possibly killed her.

**[\*P54]** Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of kidnapping and murder proven beyond a reasonable doubt. Moreover, the jury's verdict does not suggest that it clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

**[\*P55]** Finally, we reject Hooper's argument that his acquittal of rape charges somehow "contradicted" the findings of guilt for kidnapping and murder, because force was required for all of the offenses. "Although the verdicts appear to be inconsistent, the Supreme Court has held that an inconsistency in a verdict cannot arise out of inconsistent responses to different counts. *State v. Brown* (1984), 12 Ohio St.3d 147, 12 Ohio B. 186, 465 N.E.2d 889, \*\*\*, syllabus; *Griffin v. State* (1868), 18 Ohio St. 438, 444-445, \*\*\*. The court has held that an inconsistency can only arise when the jury gives inconsistent responses to the same count. *Brown* at syllabus; accord *State v. Gleason* (1996), 110 Ohio App.3d 240, 245, 673 N.E.2d 985, \*\*\*. The court explained that each count in an indictment charges a distinct offense and is

> independent of all other counts. Following that reasoning, the court found that a jury's decision as to one count is independent of and unaffected by the jury's finding on another count." *State v. Washington* (1998), 126 Ohio App.3d 264, 710 N.E.2d 307.
>
> **[\*P56]** The fourth assignment of error is overruled.

*State v. Hooper, supra*, ¶¶ 46-56.

In his Reply, Hooper does not discuss any of this evidence, but instead claims it is easier to win the Powerball than it is for a Black man to win a trial (Reply, Doc. No. 16, PageID 1184). Whatever else one may think of that argument, it is not persuasive as a matter of constitutional law. Ground Three for Relief should be dismissed with prejudice.

**Ground Four:  Ineffective Assistance of Appellate Counsel**

In his Fourth Ground for Relief, Hooper asserts he received ineffective assistance of appellate counsel in four different ways.  These are analyzed separately as sub-claims below.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

The *Strickland* test applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).  To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.*  If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether

the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52.)

This claim was raised by way of an Application to Reopen the Direct Appeal which the Second District decided on the merits. *State v. Hooper*, Case No. C.A. 22883 (2nd Dist. Jan. 28, 2011)(unreported; copy at Return of Writ, Doc. No. 6,Ex. 20, PageID 380-84)("Hooper 26(B)").

**Sub-claim One: Failure to Assert that the Termination Entry was Not a Final Appealable Order.**

In his first omitted assignment of error, Hooper claimed that the termination entry in the Montgomery County common Pleas Court omitted the method of conviction, which is required to be included by Ohio R. Crim. P. 32(C). The Second District conceded inferentially that there was an error in that form, but noted that the proper remedy was an amended judgment entry which included the proper language. *Id.* at PageID 381. Since raising the issue would not have obtained any relief from the conviction for Hooper, it was not ineffective assistance of appellate counsel to fail to raise it because Hooper suffered no prejudice. This decision of the Second District is neither contrary to nor an unreasonable application of *Strickland*.

**Sub-claim Two: Failure to Raise a Confrontation Clause Claim About the Admission of the Autopsy Report**

In his second omitted assignment of error, Hooper complained that Dr. Tookae's autopsy report was admitted in evidence but Dr. Tookae had not testified and been subjected to cross-examination. The Second District disposed of this claim by noting that the autopsy report had not been admitted in evidence. *Id.* at PageID 381-82. Hooper points to nothing in the record which undermines this factual conclusion.

**Sub-claim Three: Failure to Raise a Confrontation Clause Claim About Dr. Smith's Testimony About Events He Did Not Oversee or Supervise**

In his third omitted assignment of error, Hooper complained that appellate counsel did not challenge Dr. Smith's testimony about the collection of physical evidence on Confrontation Clause grounds. As with the second omitted error, the Second District challenged the factual premise of this claim, noting that trial counsel had challenged Dr. Smith's testimony on Confrontation Clause grounds. *Id.* at PageID 382. It also noted that Dr. Smith was in fact cross-examined and his testimony came within Ohio R. Evid. 406 with respect to routine practice of the coroner's lab. Thus there was no appropriate Confrontation Clause claim to be made on this point and it was not ineffective assistance of appellate counsel to fail to raise a meritless assignment of error. Again, this is not an objectively unreasonable application of *Strickland*.

**Sub-claim Four: Failure to Challenge Trial Court's Mischarcterization of Juvenile Adjudication**

In his fourth omitted assignment of error, Hooper claimed he had received ineffective assistance of appellate counsel when his appellate attorney did not challenge the mischaracterization of his juvenile adjudication by the trial court judge.

The Warden asserts this claim is procedurally defaulted by Hooper's having omitted it from his appeal to the Supreme Court of Ohio from the Second District. While Hooper argues this omitted assignment in his Reply (Doc. No. 16, PageID 1184), he makes no response to the procedural default defense.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). Since he failed to present this claim to the Supreme Court of Ohio on appeal from denial of his 26(B) Application, he has procedurally defaulted it.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

January 10, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).